Opinion of the court delivered by
Judge Catron. ¡
The first question in this cause is, can a specific performance he decreed against Leiper, after the lapse of more than thirty years, from the execution of the title bond from Hugh Leiper to James Craig, which occurred in 1785, and the bill was filed in 1820.
From 1785 to 1794 forbearance was mutual between Craig and Leiper, because of the embarrassment bf the title to the 640 acre entry, which was contested by Mur-free. To this point the proof is very satisfactory. Indeed Leiper refused to convey until he got a title for the Kentucky lands given in exchange for the 640 acre entry.
*194 ' In or about 1790, Craig became insane and so continued until his death in 1817. This the court thinks very fully proven, by the inquisition of lunacy, in connection with the evidence of witnesses.
In April 1796, Leiper conveyed to Feland the 640 acre entry, which he claimed to be a discharge of his obligation to Craig. During the mutual forbearance time did not form any objection to the assertion of his equity by Craig; after his insanity and duringits continuance, Craig' could not be charged with laches, nor .could his heir the complainant be so charged,becausehe filed his bill assoon as he could discover in whose possession the warrant was, without which being had in possession and adjudicated, pursuant to the laws of Tennessee, no grant could issue. But what is conclusive upon this point, grows out of the fact that Leiper himself had acquired no legal title to the land, which rested in entry, and therefore he was not in a situation to comply with his contract of 1785, at any time from the execution thereof, to the filing of this bill.
It has been contended with great ingenuity that in no case after the lapse of twenty years, and where the estate in. the meantime has changed hands, will a court of equity give specific relief; and that the insanity of the complainant forms no exception to this general rule. The existence of the rule, its propriety and policy, this court has often recognized, and has no idea of departing therefrom ; but to the exception, broad as contended for in the present instance, we cannot consent. Twenty years acquiescence by Craig, or even a much shorter lime had he been sane, would have estopped him from contesting the validity of the conveyance from Leiper to Feland, supposing it to have been made with his knowledge; but from the time of the execution of the deed in 1796 to the time of Craig’s death in 1817, he was clearly insane, incapable of assent or dissent, and not liable to the charge of laches, or sleeping upon his rights; and he is therefore not affected by the lapse of time in respect to Feland, or the eonveyanefes of those claiming under him. So far *195 this court agrees with the chancellor, who ordered the decree below, j $
The main point in this cause, and which the chancellor apprehended to he for the defendants, Leiper and Fe-land, and upon which he dismissed the bill as to them, is, does the plea of an innocent purchaser without notice apply to the mesne grantees under Feland. The land was entered by Leiper by special entry in January 1784. In March 1785 Leiper by a title bond covenanted to convey this entry to Craig. As between Leiper and Craig, this title bond in the estimation of a court of equity, transferred the right of Leiper to the land described in the bond to Craig, and which right thus vested was of a character to descend to the heir of Craig upon his death. (3 Hay. 115. 1 Term Rep. 247, 284. New. 45. After James Craig’s death, Wm Craig the complainant, had the right to enforce the execution of the bond. (3 Hay. 116. Was the conveyance from Leiper to Feland in 1796, a discharge of the bond of Leiper to James Craig of 1785? That this cannot be pretended upon the part of Leiper, will appear from the facts. Craig though physically present when the deed was executed, was clearly insane, and incapable of assent, and this perfectly within the knowledge of Leiper, who was aiding Feland to commit upon Craig, one of the grossest frauds furnished by the judicial history of any country. If the transaction stood as in 1796, after the conveyance from Leiper to Feland, there could be no doubt of the complainant’s right to enforce the bond in some shape. Do the mesne purchasers, after and through Feland, stand in any better situation, than those under, and through whom they claim title?
Jt is a rule in equity that where A. contracts to convey to B. then conveys to C. for consideration without notice, the latter takes the estates discharged of the trust. (9 John.463. Sugd. 520. This rule applies to the case where a vendor has vested in him the legal title, and transmits the same to the second purchaser. No principle governing a court of equity is better settled than this. But there is another rule equally well settled. That a pur *196 chaser of an equitable title must always abide by .the casi °f the person from whom he buys, and will be enti--(led to all the remedies of the seller. (Sugd. 524. 2 P. Wms. 495. 2 Ves. sen’r. 486.
Therefore the plea of an innocent purchaser, must aver that the vendor, was seized in fee, or pretended to be seized in fee, and without such averment the plea is clearly bad. (1 Vern. 246. 3 P. Wms. 281. 3 Ves. 285. Beames Pl. 243. 9 Ves. 32. 16 Ves. 253. 4 Dess. 287.
There is no instance, says Lord Eldon, of the plea being allowed without the averment that the party purchased from, was seized, or pretended to be seized in fee. (17 Ves. 290. There is some confusion in the application of this doctrine in Tennessee, growing out of the difference in the state of titles here, and in England. There all lands are granted from the government and passed through many hands; the titles generally are not registered, every man keeps his own title deeds, which he does not expose; in most instances none but the experienced conveyancers can ascertain whether the vendor has the legal title, of which actual possession is generally the best evidence, hence mistakes are common, and impositions are easily practiced. - The vendor must be in actual possession, and the vendee believe he is acquiring the fee, otherwise he cannot be a bona fide purchaser within the meaning of the plea. (3 Ves. 226. 9 Ves. 32. 16 Ves. 262. 17 Ves. 290. 4 Dess. 287. Beames Pl. 243.
But suppose the purchaser knows the vendor is not seized in fee, that he claims only an equity, the legal estate outstanding, and with full knowledge deals for the equity: in such case, no one will pretend that the vendee can rely upon the plea that he is an innocent purchaser without notice; the main requisite is wanting; that he believed the vendor seized in fee.
In case of land claimed by entry in this country, every person dealing therefor,is presumed to know the fact whether it has or has not been granted by the State, because this is a matter of record, which ordinary diligence can ascertain, and which all interested are bound to know if ma *197 terial, before they contract. All the defendants, then, to this cause are presumed to have known that they were dealing for an entry only. This being the case as between Craig and those defendants, pretending to be innocent purchasers, the maxim qui prior est tempore,potior est jure, he who is first in time, is best in right,applies. (Sugd. 545. 1 T. R. 775. The reason why an innocent purchaser, takes the estate discharged of the trust created by previous articles is mainly because of the laches of the first purchaser in not taking his conveyance; but this is not required where the vendor has only the equity, in which case the articles communicated the equity as well as a deed in form; and hence the foregoing principle is the governing one, that where the equities are equal, the oldest shall prevail, neither vendee having acquired the legal title. ^
In these cases the legal estate is of course outstanding in some third person, as trustee in some way; the question then arises between the dealers for the equity, who has the best right to call for the legal estate from the trustee. This right is clearly in the first purchaser, and were the trustee to convey to the second purchaser with a knowledge of the first articles, he would be liable to the value of the land to the first vendee. (2 Atk. 53. 1 T. R. 771. 10 Ves. 250, 256. 15 Ves. 335.
To this rule there is an exception where the trustee has joined in the 2d articles, ignorant of the execution of the first, (10 Ves. 270. 5 Mad. 260,) which exception however, has no application to the present controversy.
Testing the cause under examination hy the foregoing principles, and few difficulties are presented. The State held the legal title to the land for I.eiper, who covenanted to convey first to Craig, and eleven years afterwards conveyed to Feland; which conveyance has never been legally registered, and at this day stands upon no higher ground than Craig’s bond for title: Hence Craig having the oldest equity, has the best right to call for the legal estate. If the legal estate had been outstanding in a third person as trustee subject to be sued and brought before the *198 court, the cause would be entirely simple-, but it has been contended with much strength on the part of the defendants, that an entry vested in the enterer a title legal to all useful purposes, being descendable, alienable, and subject to the occupation of the owner; that the deed from Leiper to Feland passed all the estate of the former, that the purchasers from and after Feland, being bpna fide, and without notice, took the lands discharged of all fraud and trust as against Craig, and stand upon the foot of innocent purchasers of granted lands.
This argument is met by the legal reason that Craig’s equity can only be postponed for laches in not taking the legal title. It would have been folly in Craig to have taken a deed purporting to be in fee, when Leiper had no title of a freehold nature to be passed by the deed; had he done gp, still Leiper had it in his power to assign the warrant and entry to another in whose name the grant might have issued, when a deed with warranty would have been a worse assurance than a title bond, because a suit thereon would have been much more difficult and perplexing.
Until Leiper got his grant he had no right to ask Craig to take a deed; and it is very doubtful, whether the latter had any right to come into a court of equity to enforce the execution of the contract: perhaps, the redress was only at law, by an action upon the title bond. This is a point of great perplexity upon which the court will give no opinion. After the bill was filed, a grant was issued to Leiper, by consent of parties, and by an order of the court, this fact was, as supplemental matter, by consent and order of the court, made pari of the bill and answers, as this court thinks very properly, and which has relieved us from much difficulty.
It is contended, that so soon as the grant issued to Lei-per, a title vested in his grantee, Feland, and the defendants claiming under the latter. This is answered by the fact, that the deed to Feland has never been registered, nor could any title pass thereby until registered; (Cooke, 119, 126, 254;) hence the. court below, with pro *199 priety, caused the. grant to be issued to Leiper, and a ti-tie to be vested in a party before the court, to be holden in trust for the benefit of the litigant party who should on a final decree, be found to have the better right. But had it been otherwise, and the title vested as the argument claims, yet the mistake could be easily rectified by divesting the title which passed to the prejudice of Craig’s superior equity. Fearing, that by some after registration of Feland’s deed, further litigation may be produced, the court order the legal title to be divested out of the defendants, and vested in Craig; doing away all motive to further controversy.
Washington for complainant.
F. B. Fogg and W. L. Brown, for defendants.
On the subject of costs, the court has been perplexed. Feland and Leiper ought certainly to pay costs; but Lei-per is dead, and his heirs are before the court as formal parties, and not liable to pay costs. (4 Bro. C. C. 178. 3 Atk. 773. On Leiper’s death the untaxed costs fell to the ground. (2 Ves. 465. The costs of Leiper, the complainant must pay. Feland will pay all the costs of making him a party below, and on appeal. Deaderick’s executors will pay all the costs, as executors, out of assets unadminister-ed,incurred by making them parties, (because they withheld the warrant,) both in the court below and this court. The other defendants will pay their costs respectively, in the court below; and the complainant will pay the balance of the costs.
The defendants in possession of the land will surrender the same to the complainant, on or before the 25th of December next.
Decree for complainant.