11 U.S. 152
 7 Cranch 152
 3 L.Ed. 299
 WELCH
v.
MANDEVILLE.
 March 2, 1812
 
 1
 Present. All the judges.
 
 
 2
 ERROR to the Circuit Court for the district of Columbia, sitting at Alexandria.
 
 
 3
 An action of covenant was brought in that Court, in the name of James Welsh, the Plaintiff, but really for the use and by the sole orders of Allen Prior, against Mandeville and Jameson, upon a contract for the sale of land to them by Welch. At the second term after an office judgment had been entered against Welch at the rules, the Defendant, Mandeville, who alone had been taken, produced to the clerk a release under the seal of Welch and an order from him to dismiss the the suit; whereupon the clerk made an entry on the minutes of the Court, that the action was dismissed by agreement of the parties. Afterwards, at the same term, the attorney who brought the suit in the name of Welch, moved the Court to re-instate it, and grounded his motion upon his own affidavit and the papers mentioned therein. The affidavit stated, that in the autumn of 1799, Prior, brought to the attorney 3 bills of exchange, drawn by Welch upon Mandeville and Jameson, for 2500 dollars each, and an account in the handwriting of Mandeville, acknowledging a balance due to Welch on the 31st of January, 1798, of 8707 dollars and 9 cents to be paid in the times and manner therein stated. Prior, at the same time, stated that Welch was indebted to him and that he had taken those bills in payment, which Mandeville and Jameson refused to accept, saying that Welch had deceived them in the sale of the lands. Prior left the papers with his attorney, and requested him to take the best measures to obtain the money from Mandeville and Jameson; whereupon he brought two suits in the county Court of Fairfax, in Virginia, the one was a suit at law in the name of Welch against M. and J. founded upon their acknowledgment of the balance of account.—The other was a chancery attachment, in the name of Prior against Welch, as an absent debtor, and charging M. and J. as Garnishees.
 
 
 4
 Upon the trial of the suit at law, the Defendants produced the original contract respecting the sale of land, whereupon the attorney for Welch suffered a non-suit, and having obtained an office copy of the contract brought the present suit thereon, for the use of Prior, in the name of Welch, but without his directions, which was known to Mandeville. There had been no decision in the chancery attachment. The attorney never had any communication with Welch upon the subject of this suit; but he had reason to believe that Welch knew of the suits in Fairfax county and did not interfere with them. The attorney corresponded solely with Prior on the subject of this suit, who had directed the application of the money when recovered. That the attorney did not know of the release and order to dismiss the suit until after the entry was made on the minutes, and that the suit had been dismissed without his consent or that of Prior, who had been at all the expense of the suit. That he had been informed that Welch was in the prison bounds, and that when Prior put the papers into his hands, he informed him that it was his only prospect of receiving payment of the debt due to him by Welch.
 
 
 5
 Whereupon the Defendant, Mandeville, produced the affidavit of Welch, stating that he drew the bills in favor of Prior, merely for him to get them accepted, and negotiate them for account of Welch and as his agent. That Prior never gave value for them, and instead of being the creditor of Welch, was his debtor; and that he, (Welch) never made a transfer or assignment of the contract with Mandeville and Jameson to Prior or any other person.
 
 
 6
 The Defendant, Mandeville, also produced a paper purporting to be the answer of Welch, to the chancery attachment in Fairfax county, (but which had not then been filed in the suit) which contained the substance of his affidavit—and also a letter written by Welch to Mandeville and Jameson, and sent by Prior at the time he presented the bills, corroborating the fact that Prior was only his agent in that business.
 
 
 7
 In this state of the case the Court below continued the motion to re-instate the cause until the next term, to give an opportunity to Prior to produce evidence of an assignment of the contract and of his right to bring suit upon it; at which term he produced his own affidavit stating that Welch was indebted to him upwards of 14000 dollars, and that Welch gave him the 3 drafts on Mandeville and Jameson, for his (Prior's) own use and benefit, for and on account of a tract of land sold to Welch, and which Welch sold to another person. He produced also certain other documents tending to corroborate his affidavit.
 
 
 8
 But the Court below refused to re-instate the cause and ordered it to be dismissed according to the agreement of the parties; to which refusal Allen Prior took a bill of exceptions which the Court signed.
 
 
 9
 Upon the opening of the case,
 
 
 10
 MARSHALL, chief justice, enquired whether the question, whether a refusal to re-instate a cause, be ground of error, had not been decided by this Court.
 
 
 11
 E. I. LEE, for Plaintiff in error—said that it had not been directly decided.
 
 
 12
 The clause of the act of Congress which gives this Court appellate jurisdiction of causes decided in the Circuit Court for the district of Columbia, (Laws United States, Vol. 5. p. 270. § 8.) differs from that clause of the general judiciary which gives this Court its appellate jurisdiction in other cases. The expression of the former clause is 'any final judgment order or decree;' but the expression in the general law (Vol. 1. p. 62. §. 22.) is 'final judgments and decrees.' The word order must mean something different from a judgment or a decree. It seems peculiarly applicable to a final order dismissing a suit. This peculiar phraseology was relied upon to give jurisdiction to this Court in the case of Custiss v. The Georgetown Turnpike Company, (Cranch, vol. 6 p. 233.)
 
 
 13
 SWANN, contra.
 
 
 14
 This case is within the principle of the cases already decided by this Court—such as the refusal of the Court below to grant a new trial, or to continue a cause. To re-instate a cause, after it has been once legally decided is a matter of mere discretion.
 
 
 15
 E. I. LEE, in reply.
 
 
 16
 If the clerk had dismissed it at the rules, and the Plaintiff had applied to the Court at the next succeeding term to re-instate it and the Court had refused, it would not have been an exercise of discretion, but denial of right. It would have been error in law. 1. Strange, 235, Newell v. Pidgeon.
 
 
 17
 C. LEE, on the same side.
 
 
 18
 There is a difference between dismissing a cause without trial and refusing a new trial. It cannot be possible that the Court may dismiss every suit upon the docket and yet the injured parties have no remedy; which would be the case if the dismissing of a suit be matter of discretion which this Court cannot control.
 
 
 19
 March 5th. All the Judges being present,
 
 
 20
 MARSHALL, Ch. Justice.
 
 
 21
 The majority of the Court is of opinion that the motion to re-instate the cause, was an application to the discretion of the Court, and its refusal is not a ground for a writ of error.
 
 
 22
 After the Court had delivered this opinion it became a question whether the writ of error should be dismissed, or the judgment affirmed.
 
 
 23
 After consideration of the case again,
 
 
 24
 On the 7th of March, MARSHALL, Ch. Justice, stated it to be the opinion of the Court, that the judgment of the Court below should be affirmed. The writ of error is to the judgment generally. The refusal to re-instate the cause being no error in law, the Court can see no error in the principal judgment.
 
 
 25
 Judgment affirmed.