ARCHIBALD W. NEWTON, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. When at the assembling of a Circuit Court, no grand jurors shall have been summoned in the manner provided by law, it is not error for the Judge presiding to order the Clerk to issue a special venire commanding the Sheriff to summon the number of

qualified jurors so ordered from the bystanders, or the body of the county at large.

2. Section 1, Chapter 3125, Laws 1879, gives to the court no discretion in the matter of issuing a commission to take testimony. If the proof on the part of the accused meets the requirements of the statute, it is "made the duty of the Judge to order that a commission be issued."

3. In order to avoid the necessity of the issuing of a commission to examine a witness, under such circumstances, it is not sufficient for the prosecutor to admit that if the witness was present or examined on interrogatories, he would testify to the material facts stated in the affidavit on which the motion is founded. The admission must be of the absolute truth of the facts so stated, or the accused will be entitled to his commission, or continuance.

4. Before the commencement of the trial, counsel for the accused moved the court for an order that all articles in the possession of the State, intended to be used in evidence, be placed in the hands of the Clerk or other officer of the court for their inspection. The State Attorney filed a statement, by which it appears that all such articles had been seen and examined by counsel for defence and the experts in their behalf, and that they were fully acquainted with such articles—and further agreeing that such articles should be submitted to counsel for defence before they were so offered in evidence. No denial of this statement was made by the defence. *Held*, that in overruling the motion there was no error.

5. The examination of the accused in a criminal case, taken before a coroner and jury, where such witness was not at the time under arrest, or charged with the crime, and where he was instructed by the coroner that he need not answer any question that would criminate him in any way, is proper evidence to go to the jury, when such witness himself is subsequently indicted and on trial for the offence.

6. The general rule in such cases is that what a party voluntarily says in relation to the offence is admissible in evidence against him, whether on oath or not. An affidavit made by him to procure a continuance of the cause, or for a commission to examine witnesses, is not excepted from this rule.

7. The credit of a witness may be impeached by proof that he has made statements out of court contrary to what he has testified at the trial. In laying the foundation for such impeachment, it

is necessary to inquire of him as to the time, place and person involved in such supposed contradiction. Then the proof of the contradictions may be submitted to the jury. The witness cannot be contradicted except by proof ; not by statements of counsel or other persons not under oath.

8. When counsel, upon the trial of a cause before a jury, abusing his privilege to the manifest prejudice of the other party, makes statements with regard to evidence being adduced not pertinent and therefore not within his privilege, it becomes the duty of the Judge to stop him at once. And if he fails to do so, and the impropriety is great, it is ground for a new trial.

9. When improper and illegal evidence has been introduced and permitted to go to the jury under exception, and not withdrawn by the counsel offering it, or the jury have not been instructed by the court to disregard it entirely for every purpose, and the Appellate Court can see that it may have had a prejudicial influence upon the minds of the jury in making up their verdict, this is ground for a new trial.

10. Remarks of counsel in the argument of the case, outside of the evidence, and the reasonable bounds of argument, having no relation to the guilt or innocence of the accused and intended to excite the passions and influence the minds of the jury against the accused, should be prohibited or stopped by the court in the exercise of a sound discretion; and when they are indulged in by counsel, and not prohibited or stopped, it is good ground for a new trial.

11. It is improper for counsel to add, by his own statement, a fact without the authority of an oath or evidence to the testimony as submitted to the jury. A statement of a fact by counsel not authorized or proven by the evidence, should not be allowed to go to the jury.

12. It is proper for the court to charge the jury as to the distinctions made between direct and circumstantial evidence, especially in a case where such proof is in a great measure circumstantial.

13. It is error for the court to charge, "If a homicide or killing is proven, and no ground of defence set up or proven as to the reason, or cause, or motive, the law presumes that it was premeditated, unless proven to be accidental or unintentional." Premeditation is a question of fact for the jury, to be determined from the whole evidence.

14. The charge of the court plainly explained to the jury the distinctions made by law in the different degrees of murder, to wit : the first, second and third degrees. Although perhaps unnecessary under the proofs, yet held to be no such error as would authorize a new trial, as it was in no manner prejudicial to the interests of the accused, and could not influence the jury against him in their findings.

15. The statute of this State (Laws 1872, Chap. 1877), provides that a *majority* of the jury, in the trial of a capital offence, may recommend to mercy. If the court charge, the jury on this question, it should be in the language of the statute. The court is not called upon to charge upon it. Counsel may read the act to the jury, and the Judge may give it to the jury if it is desired by counsel.

16. The opinions of medical men are admitted as to the cause of disease, or of death, or the consequences of wounds, and as to the sane or insane state of a person's mind, as collected from circumstances, and as to various other subjects of professional skill, though the witness founds them not on his own personal observation, but on the case itself as proven by other witnesses on the trial.

Appeal from the Circuit Court for Orange county.

The facts of the case are stated in the opinion.

*E. K. Foster, George B. Hodges* and *Scott & Thrasher* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error. .

MR. JUSTICE VANVALKENBURGH delivered the opinion of the court.

The plaintiff in error, Archibald William Newton, on the twenty-second day of May, A. D. 1883, was indicted in the county of Orange for the murder of one Samuel McMillan.

On the 31st day of May, at the same term of the Circuit Court, the defendant, Newton, was arraigned and entered his plea in abatement, alleging that the indictment was

found by an illegally constituted grand jury, in this: that the grand jury had never been legally drawn and summoned; that on the 14th day of April, 1883, the Clerk of the Court, in pursuance of law, drew from the box eighteen men to serve as grand jurors for the Spring term of the said court, to be held on the 7th day of May, 1883, and that he issued a venire to the sheriff of the county for the summoning of said persons; that the sheriff failed to execute the venire and made a return thereon in words and figures following:

" Returned without service, having at January term summoned a grand jury for Spring term of the Circuit for Orange county. The Legislature of 1883, having changed time of holding court. This venire returned without service to await orders of the Judge of said court. May the 14th, 1883.

" T. W. SHINE, Sheriff."

That the court, thereupon, made an order directing the sheriff to summon eighteen persons from the body of the county, or the by-standers, to serve as such grand jury; that such grand jury was so summoned from the body of the county of Orange, and the by-standers; that the court should have ordered the sheriff to have served the venire issued to him before, to wit: on the 14th day of April, by the Clerk. As another reason the defendant charges that the return of the sheriff on such venire was made, although dated May 14th, 1883, subsequent to the finding of the indictment.

To this plea in abatement, the State's Attorney demurred and assigned the following grounds of demurrer:

1. That the allegations in the said plea, even if true, do not constitute any legal ground for abating the said cause.

2. Because the records of the court and the order of the court show that the sheriff reported on the opening of the

court that the grand jury had not been drawn and summoned according to law.

After argument, the court sustained the demurrer, to which ruling the counsel for defendant excepted.

The defendant then entered his plea of not guilty.

By an act of the Legislature, approved February 9th, 1881, the times for holding the Circuit Courts in the Seventh Judicial Circuit were fixed. The spring term in Orange county on the fourth Monday in January and the fall term on the second Monday in August. This law was changed by an act approved January 18, 1883, chap. 3435. The spring term in Orange county was changed to 2d Monday in May, and the fall term to the 2d Monday in December. The sheriff failed to execute the venire issued for the May term, for the reason, as he says in his return, that he "had at the January term summoned a grand jury for the Spring term;" that the time of holding the term of the court having been changed by the Legislature, he returned the venire issued 14th April, "without service, to await order of the Judge of said court." The return of the sheriff is dated the 14th day of May, 1883, the day of the return of the venire. On this return the Judge of the court made his order that the sheriff summon the grand jury. There is no evidence that the return was antedated, or was made or entered at any other time than that specified in the return, and the indictment, as appears from the record, was found and filed in the Clerk's office of the court on the twenty-second day of May, 1883.

Section 32, Chapter 1628, Laws 1868, provides that "if for any cause the whole number of any grand or petit jury should fail to be summoned according to the provisions of this chapter, the Judge of the court may direct the clerk to draw, in the manner provided in this act, grand and petit juries, and issue a venire to the sheriff, or

other officer, directing him forthwith to summon a suffi-
cient number for such grand and petit juries." Chapter
2046, Laws 1875, provides that "whenever for any cause
no grand or petit juries shall have been drawn and sum-
moned in the manner provided by law, * * it shall be law-
ful for the Circuit Courts, or the Judges thereof, to order
the clerks thereof to issue special venires to the sheriff,
* * * commanding him to summon from bystanders or the
body of the county at large the number of qualified jurors
so ordered."

In the case at bar no grand jury had been summoned to
attend the session of the Circuit Court then being held by
virtue of the law. The venire had been issued to the
sheriff, and according to his return he failed to execute it
for reasons assigned. The court assembled, and under the
circumstances the Judge ordered a jury to be summoned in
accordance with the law. A venire was issued to the sheriff
and a jury was found from the body of the county or by-
standers. This is our understanding of the record, as no ex-
ception is made that no venire was issued by the clerk to
the sheriff.

This question is fully discussed in the case Jones vs. The
State, 18 Fla., 889, and cases there cited. There was no
error in the judgment of the Circuit Court in sustaining the
demurrer to the plea in abatement.

The second error assigned is "that the court erred in not
ordering commissions to issue to take the testimony of Hor-
ace Lord, Thomas G. Bennett and James Bouron."

On the same day the counsel for the defendant, on an affi-
davit made by the defendant, applied, (under Chapter 3125,
Laws 1879,) for a commission to examine Horace Lord, of the
city of Hartford, county of Hartford, and State of Connecti-
cut, Thomas G. Bennett, of the city of New Haven, county
of New Haven, State of Connecticut, and James Bouron, of

Hull, England, as witnesses for the defendant on the trial of the case. The affidavit stated that the evidence of these persons was material and necessary to his defence; it also sets out *in extenso* what he expects to prove by each and every of said persons, and is in other respects in compliance with the said law. Interrogatories to be propounded to each of said persons, so claimed to be material witnesses, were filed by defendant's counsel, as well as an affidavit in support of the motion made by E. K. Foster, Esq., one of defendant's counsel.

The court thereupon, after hearing the argument of counsel, granted the motion for commissions. The State's Attorney thereupon presented to the court certain papers, offering therein to admit facts sought to be proved by the defendant by the witnesses named in their application for commissions, in order to induce the court to revoke its order. These papers are in the words following: "And now comes Alex. St. Clair Abrams, State Attorney for the Seventh Judicial Circuit of the State of Florida, and offers for and in behalf of the State, as set forth in the affidavit of E. K. Foster, Esq., counsel for the defendant, to admit and to acknowledge as evidence, and to permit to go to the jury as such, in behalf of the defendant,

" 1st. That the said James Bouron, if here present or if answering to the interrogatories propounded to him, would testify that he had in his charge and under his control five thousand pounds, the property of his sister, the wife of the accused, and that he had been ordered by the accused before the killing of the said Samuel McMillan to convert the same into cash, so that defendant could purchase a place or grove near their residence, in Orange county;

" 2d. That the said James Bouron, if here present or if answering to the interrogatories propounded to him, would testify that he gave to the wife of the defendant moneys

amounting to $900 in the currency of the United States, and that she brought said moneys with her to the United States.

(Signed) " ALEX. ST. CLAIR ABRAMS,
" State's Attorney Seventh Judicial Circuit."

"And now comes the State's Attorney, Alex. St. Clair Abrams, and admits for and in behalf of the State that Horace Lord, who is Superintendent of the Colt's Arms Manufacturing Co., of Hartford, Connecticut, would testify that if a bullet was fired from a pistol having a rifling drawn from left to right it could not have been fired from a Colt's revolver known as a 38 caliber double action; and that the twist or rifling of all Colt's revolvers are the same, and that prior to October 1st, 1882, a very large number of 38 caliber double action revolvers had been made and sold. The State further admits that the evidence is true.

"2d. The State admits that Thomas Bennet twould prove that bullets of shells of 38 caliber do not weigh as low as 145 grains when extracted from the shells of cartridges made by the Winchester Repeating Arms Co.; that they should weigh nearer 148 grains; that they are manufactured by this company, and are all as accurately made as they can be, and that it is not possible for a person to swear from a bullet discharged from a shell of a cartridge made by them, that it is made by the Winchester Arms Co., when the party so swearing has not other means of knowledge than the bullet itself.

"The State admits all this to be true.

(Signed) "ALEX. ST. CLAIR ABRAMS,
State's Attorney."

"STATE OF FLORIDA, ⎰
   Orange County. ⎱

" Personally appeared before me Alex. St. Clair Abrams, who being duly sworn, says: That he is

State's Attorney for the Seventh Judicial Circuit of Florida, and as such State's Attorney prosecutes the pleas of the State in the county of Orange. Deponent says that on the second day of November, A. D. 1882, Archibald William Newton, who now stands arraigned before the bar of this court on an indictment for murder in the first degree, was committed to await the action of the grand jury, after a long and exhaustive examination before a Justice of the Peace, during which a considerable volume of testimony was taken, revealing to the accused and to his counsel the evidence upon which the charge was based, and giving to the said accused the amplest opportunity to prepare his defence; that the accused was committed to the county jail of the county of Orange on the 2d day of November, 1882, and that soon afterwards, to wit: during the months of November and December, it being generally and widely stated that the accused through his counsel would not be ready for trial at the term then approaching, which was then fixed by law for the month of January, 1883, but would demand a continuance of the said cause; this deponent, as State's Attorney aforesaid, notified, in person, Hon. E. K. Foster, of counsel for the defence, that at the meeting of the Circuit Court for Orange county, in January, he would, as State's Attorney, present a bill of indictment to the grand jury, and press the case for trial at the said term; that subsequently the time for holding the Circuit Court for Orange county was changed to the month of May, by which change the accused was given four months additional time in which to prepare his defence. Deponent says that after the Legislature had passed the act changing the time, he again, while at Tallahassee, verbally notified Hon. E. K. Foster, attorney for the accused, that he would press the case to trial at the now pending term of the Circuit Court; that soon after-

wards he instructed his assistant, R. L. Summerlin, to notify the defendant, through his counsel, in writing, that the case would be pressed for trial at the now pending term of the court, which notification in writing was given. Deponent further says that on all and every occasion of his notifying the counsel for the accused of his purpose of pressing the case for trial, the counsel for the accused invariably declined to agree to be ready for trial at the now pending term. This deponent further says that it is not the purpose of the State to prove that a Colt's 38 calibre revolver is rifled in any particular way, hence there will be nothing for Horace Lord to rebut, and consequently the interrogatories directed to him are utterly without relevancy in this action. It is the intention of the State to produce in evidence a pistol with which it is alleged the murder was committed, which pistol will be placed before the jury. This deponent further says it is not the purpose of the State to deny that a bullet of a 38 calibre Winchester Arms Company cartridge should weigh, and generally does weigh 148 grains, but that on the contrary it is the purpose of the State to show and to prove that the bullets of said calibre, manufactured by said company, do generally weigh 148 grains; that, therefore, there is nothing in the interrogatories proposed to Bennett that the State does not propose to prove precisely as is set forth in the interrogatories ; that therefore the evidence sought to be obtained cannot be material in the said cause. This deponent further says that after seven months of the most arduous and persistent labors, and at great expense to the State of Florida, he has procured the attendance of the witnesses in the said cause, and is ready to proceed to the trial thereof; that the defendant, Archibald William Newton, has had seven months in which to prepare his defence, and has been fully advised of all the material facts sought to be

proven against him; that said deponent is informed and believes that the defendant, Archibald William Newton, has had ample means at his disposal in the preparation of his defence; that he has employed detectives to work up and gather testimony in his behalf; that it was entirely within his means and power to have procured the attendance of his wife's brother at the pending term of this court, had he been so disposed; that he had a full knowledge seven months ago concerning the matters and things required to be proved by his said wife's brother; that although empowered by the statute to make application for a commission to take the testimony abroad in vacation, as well as in term, he has neglected and failed to avail himself of this right during the seven months of his awaiting the action of the grand jury.

" This deponent further says that the witnesses are some fifty or sixty in number, some of whom reside beyond the limits of the State, and have been brought here at great expense, and after considerable labor, from Ohio, Mississippi, Pennsylvania, Massachusetts and other remote points; that other of the witnesses are persons in feeble health, and of so frail a tenure upon life that it is possible they will not be living at the next term of Circuit Court to be holden in November next, of the present year. This deponent further says that it will be practically impossible again to bring together this large array of witnesses in this cause; that the defendant is aware of this fact, and for the purpose of preventing the trial of this case has now filed his application for a commission to Great Britain; the effect of granting this application, at this time, will be to prevent the trial of this cause at any time. This deponent further says that he is not actuated by any purpose to prevent the accused making as complete and thorough a defence as he can, nor does he seek to deprive him of any legal rights he

may have in the premises, but that he has repeatedly put the defendant, through his counsel, upon notice of his purpose to press the cause to trial at the pending term; that the defendant is in laches if he is not prepared, and is not entitled to any further delay.

"ALEX ST. CLAIR ABRAMS.

"Sworn to and subscribed before me this June 1, 1883.

"T. J. SHINE, Clerk.

"by J. L. BRYAN, Dep. Clerk."

The court thereupon ordered the admissions so made by the State's Attorney to be filed, and refused to grant a continuance of the cause, thus in effect nullifying its previous order for a commission. The counsel then filed exceptions to this ruling of the court as follows:

"Defendant's counsel excepts to the court permitting the admissions of the State Attorney to be allowed in the place of the deposition, and in refusing to make the order for the commissions on two grounds:

"1st. Because the statute is imperative that if the court is satisfied that the evidence is material, it is made his duty to order the commission to issue; and—

"2d. On the ground that to give the admissions of the State the force of evidence, the admissions must be that the witnesses would swear as stated in the affidavits filed, and also that the truth of the facts stated as expected to be proved by Horace Lord, Thomas G. Bennett and James Bouron should be admitted.

"E. K. FOSTER,

"GEO. B. HODGES,

"SCOTT & THRASHER,

"Attorneys of Defendant.

"June 1st, 1883."

This application for a commission to examine the wit-

nesses named was made on the same day that the court sustained the demurrer to the plea in abatement filed by the defendant, and on the same day that the defendant was arraigned on the indictment, the indictment having been found at the same term of the court, and but a few days before such arraignment of the defendant. The application was made upon the sufficient affidavit of defendant, supported by an affidavit of one of his counsel, and interrogatories at the same time filed. The court, on the first day of June, being the day after the arraignment of the defendant, and the application for the commission, granted the motion for the commission. The State's Attorney then immediately upon the order being made presented the papers admitting, as he claimed, the facts sought to be proved by the witnesses named in the interrogatories. He further shows by his affidavit that defendant had been in prison some seven months; that the State had been to great expense in procuring witnesses; that he had notified counsel for defendant of his intention to press the indictment, if one should be found, to trial at the first Circuit Court to be held in the county. The court thereupon vacated, in effect, its order for a commission to issue, directed the admission of facts made by the State's Attorney to be filed, and ordered the trial to proceed.

The statute under which such commission was applied for is entitled "An act relating to testimony in criminal cases," chapter 3125, approved March 11, 1879. Section one of such law reads as follows : " When any person is arraigned before a Circuit Court upon indictment or information, charged with a crime which is by law a felony, and shall satisfy the court by his oath in writing, or by the affidavits of other credible persons, that the testimony of absent persons is material and necessary to his defence, and that such witnesses reside beyond the jurisdiction of the court,

or [are] so sick or infirm that with diligence they cannot be procured to be in attendance at the same or the next succeeding regular or special term at which the case may be tried, it shall be lawful, and it is hereby made the duty of the Judge, upon the proper application of the accused or his attorney, and the filing of the interrogatories to be propounded to such absent witnesses, to order that a commission be issued to some competent person or persons to take the deposition of such witnesses to be used on the trial."

This act gives to the court no discretion; if the proof on the part of the accused meets the requirements of the statute, it is "*made the duty of the Judge * * * * to order that a commission be issued,*" &c. In this case such proof met fully those requirements. The accused had been arraigned upon an indictment for a felony. His affidavit fully complied with this statute, the interrogatories were filed, and the court was satisfied and granted the motion. The State's Attorney thereupon in terms admitted that what the accused proposed to prove by two witnesses, to wit: Horace Lord, Superintendent of the Colt's Arms Manufacturing Co., of Hartford, Connecticut, and Thomas G. Bennett, was true. He also admitted that if James Bouron (one of the witnesses for whom a commission was asked) were here present, " or if answering to the interrogatories propounded to him, would testify that he had in his charge and under his control five thousand pounds, the property of his sister, the wife of the accused, and that he had been ordered by the accused, before the killing of the said Samuel McMillan, to convert the same into cash, so that defendant could purchase a place or grove near their residence in Orange county." And he further admits that the " said James Bouron, if here present, or if answering to the interrogatories propounded to him, would testify that he gave to the wife of the defendant certain moneys amounting to $900, in

the currency of the United States, and that she brought said moneys with her to the United States." He does not admit, as in the case of the before mentioned two witnesses, that such evidence would be true.

This is not a motion for the continuance of the case to a subsequent term of the court, but it is a motion for a commission to take the testimony of witnesses, two of them residing in the State of Connecticut, and the other in Hull, England. If the commission had been granted it would, in effect, have been a continuance of the case, as it would not have been possible for the commission to have been executed and returned at the then pending term of the court, and it was probably so considered by all the counsel then engaged. The rules that govern the two applications for continuance or commission, so far as this case is concerned, we consider analogous.

The application was made to the court for the commission within a few days after the indictment was found, and on the day of the prisoner's arraignment. The State's Attorney insisted that it should have been made before indictment, while the defendant was in jail awaiting a term of the court. While it might have been made in vacation after indictment, (§2, chap. 3125, Laws 1879,) there is no rule of law, with which we are familiar, imposing upon the accused the necessity of defence before crime is legally imputed to him. It was undoubtedly in his power to have taken means to defend himself against any alleged crime, yet until such offence was legally brought to his knowledge " upon indictment or information," as provided by the act before referred to, he was not bound to proceed. It is certainly questionable whether under that act the Judge would have power to grant the commission without consent, until after arraignment in a Circuit Court.

The question then arises, were the admissions made and

filed with the court sufficient to waive the necessity for the commission.

The true rule must be, that the admission in a criminal case must be as to the *truth* of the matters alleged to be proven by the absent witness, and not simply, that if present, or examined on interrogatories, he would testify to such matters and facts. In the case of the People vs. Vermilyea, 7 Cowen, 369, it was held by the court that it is no answer to an application for a continuance of the cause to admit that the witness would, if present, testify to the material facts stated in the affidavits on which the motion is founded, though *semble* it would be an answer to admit unqualified the truth of such facts.

In relation to this question, Savage, C. J., in his opinion in the same case says: " The practice of requiring concessions in such cases is novel ; and I apprehend not well calculated to advance justice. But if to be encouraged, it seems to me that the prosecutor should admit all that the defendant can possibly obtain by the witness ; *which is the truth of the facts proposed to be proved,*" and cites Brill vs. Lord, 14 John., 341.

In the case of The State vs. Alexander Brette, 6 La. Ann., 652, the court, in its head note to the case, says : "In criminal cases, when the accused applies for a continuance upon the ground of the absence of material witnesses, accompanied by an affidavit of the facts he expects to prove by the absent witnesses, he cannot be forced to trial upon the prosecuting attorney offering to admit, that if the witnesses were present they would swear to the facts as stated, reserving the right to disprove their testimony. The admission must be of *the truth of the facts* stated in the affidavit, or the accused will be entitled to a continuance."

The opinion sustains this head note.

In VanMeter vs. The State, 60 Ill., 168, where the de-

fendant was tried on an indictment for riot, he made an affidavit for a continuance. Lawrence, C. J., in delivering the opinion of the court, says: " A motion for a continuance was made, and the court after holding the affidavit sufficient, (as in this case,) overruled the motion upon the offer of the State's Attorney to admit that the absent witness would, if present, swear to the facts set forth in the affidavit. * * * It showed good ground for continuance, and the court should not have overruled the motion in consequence of the offer made by the prosecuting attorney. The act of 1867, (Session Laws of Ill., of 1867, page 157,) under which this admission was made, is simply an amendment of the practice act, and does not apply to the trial of criminal cases. The original act in regard to the admission of affidavits was not designed to apply to criminal proceedings, as decided by this court in Willis vs. The People, 1 Scam., 402. We see, however, no objection to such a practice, in the discretion of the Circuit Judge, even in criminal cases, but it must be the old practice of admitting the statements of the affidavit to be absolutely true, and not the rule established by the law of 1867, for civil cases, permitting the affidavit to be contradicted." Wassells vs. The State, 26 Ind., 30, and cases cited.

In the case of DeWarren vs. The State, 29 Texas, 464, the court, in its head note, fully sustained by the opinion, says: " When the accused applied for a continuance, and swore to the material facts which the witnesses would state, upon which the District Attorney admitted that the witnesses would swear to the facts as stated, but refused to admit that such facts were true, reserving to himself the privilege to disprove the statements, or to discredit the witnesses, it was error to force the accused into trial." Goodman vs. The State, 10 Tenn., 195.

In the case of The People vs. Diaz, 6 Cal., 248, the ac-

cused was indicted for murder, he moved for a continuance on the ground of the absence of material witnesses, the court overruled the motion upon the ground that the District Attorney admitted that the witnesses would testify as alleged in the affidavit, which evidence was material. The court say : " It was not sufficient that the District Attorney agreed that the witnesses would have deposed to certain facts, if present; he should have admitted the truth of these facts, absolutely."

We can see upon an examination of the evidence in this cause, as it appears in the record, how the proof offered by the deposition of Bouron was material to the proper defence of the accused, and inasmuch as the State's Attorney declined to admit the truth of the facts proposed to be proven by such evidence, how the defendant was jeopardized. The statute gives to the defendant under certain circumstances, the right to the commission. Holding, as we do, that under the circumstances of this case as they appear in the record, the same rule must apply as on a motion for a continuance in regard to the admission of the truth of the material facts, the first order made by the court granting a commission was correct, and that in vacating that order and forcing the accused to trial, it erred.

The third assigned error is: " That the court erred in not granting the order in relation to the articles to be used in evidence."

Before the trial of the case was entered into, the counsel for the accused asked the court for an order that all articles in the possession of the State intended to be used in the evidence and prosecution against the defendant be placed in the hands of the Clerk of the Court, or such other officer as the court might direct for the inspection of the counsel for the defendant. In answer to such application the State's Attorney filed a written statement substan-

tially as follows: That he is informed and believes and so states, that all articles in his possession or in the possession of the prosecution or its witnesses, and which are intended to be offered in evidence, have been seen and examined by the counsel for the defence, and the experts in their behalf at the preliminary examination, and that they are fully acquainted with the matter of such articles. He further asks that if there be any article in his possession intended to be offered in evidence not yet seen or inspected by the defendant, or his counsel, that his counsel specify what such articles are. He further states that all articles in his possession intended to be offered in evidence, will be submitted to counsel for the defence for inspection before they are offered in evidence, even though they may have already been seen and inspected.

The defendant's counsel made no reply to this written statement, and in no way denied the truth of any part of it. The court then denied the application of the defendant's counsel, and they excepted thereto. We can see no error in this ruling of the court. No authorities are cited upon the part of the defendant. The defendant and his counsel had both seen and examined all the articles in possession of the prosecution proposed to be offered in evidence. The State's Attorney further agreed that all such articles intended to be offered in evidence will be submitted to the defence for inspection, even though they may have been before seen and inspected, before they are so offered. This is sufficient and there is no error in the ruling of the court.

The fourth error assigned: "That the court erred in allowing the State's Attorney to file admissions of evidence in regard to Horace Lord, Thomas G. Bennett and James Bouron," has already been considered under the second assigned error.

The fifth error assigned, is : " That the court erred in allowing the State's Attorney to offer and put in evidence the affidavit of A. W. Newton, taken before the coroner." The record shows that an inquest was held on the remains of the deceased by Edgar Harrison, a Justice of the Peace acting as coroner. At that inquest the accused, A. W. Newton, was examined as a witness. Before any of the witnesses were examined, Harrison testifies: " I called the witnesses before me, and told them they need not answer any questions that they were afraid would criminate themselves in any way." The witness, Newton, was present when this announcement was made, and in no way was then charged with the offence. His evidence was duly taken by the coroner through another person. The coroner testifies that he and the jury examined the accused on that occasion. The evidence of Newton, thus taken on the coroner's inquest, was permitted to go to jury by the court under an exception taken by counsel of the accused. Newton was not, at the time of his giving this evidence, accused, or perhaps even suspected, of the crime alleged against him. All the witnesses were properly cautioned by the acting coroner before being sworn, and Newton delivered his evidence with a full knowledge of its effect.

In the case of the People vs. McMahon, 15 N. Y., 384, Mr. Justice Selden says: " Confessions and statements made by persons charged with crime have been very differently regarded by the civil and the common law. The former, reposing with confidence upon the assumption that one who is innocent will never admit that which tends to show guilt, treats the declarations and admissions of the accused as evidence of the most satisfactory kind. To such extent does it carry this idea, that in all except capital cases a confession by the accused is deemed conclusive evi-

dence of guilt unless met by overwhelming proof to the contrary. Domat's.Civil Law, §2086, Cushing's Ed.

" The common law on the other hand, with, as I think, a truer philosophy and better appreciation of the nature and operations of the mind, regards this species of evidence with distrust. It carefully scrutinizes the circumstances and rejects the evidence if it sees that no safe inferences can be drawn from it. The first distinction which it makes, is between a declaration or statement made before, and one made after, the accused was conscious of being charged with, or suspected of the crime. If before it is admissible in all cases, whether made under oath or without oath, upon a judicial proceeding or otherwise; but if made afterwards, the law becomes at once cautious and hesitating. The inquiry then is, was it voluntary? For unless it is entirely voluntary, it is held not to be admissible."

Again, the court says in this opinion, after having fully discussed what is meant by the term " voluntary—"

" Another rule which may now be regarded as settled is, that the statement although made under oath, and upon a judicial examination as to the crime, may be still admitted, if at the time it was made the prisoner was not resting under any charge or suspicion of having committed the crime."

In Hendrickson vs. The People, 10 N. Y., 13, the court say : " In all cases, as well before coroner's inquests as on the trial of issues in court, when the witness is not under arrest, or is not before the officer on a charge of crime, he stands on the same footing as other witnesses. He may refuse to answer, and his answers are to be deemed voluntary, unless he is compelled to answer after having declined to do so. In the latter case only will they be deemed compulsory, and excluded." State vs. Broughton, 7 Iredell, 96 ; Schoeffler vs. The State, 3 Wis., 823.

We can see no error in the court admitting the testimony of Newton, as taken at the inquest. The objection taken to its admission, that it was on oath, or an affidavit as it is termed in the objection, does not apply, the defendant, Newton, at that time not being charged with the crime. The general rule is that what a party says in relation to the offence is admissible in evidence against him whether on oath or not, provided, always, he is not at such time charged with the commission of the crime, and such statement is voluntary.

The sixth assigned error is: "That the court erred in allowing the State's Attorney to offer and put in evidence the affidavit of A. W. Newton, made at the time of applying for commission to take testimony."

In the course of the trial, on the 23d day, the record at page 683 shows that the State's Attorney proposed to read in evidence "the affidavit for continuance made by A. W. Newton, the accused in this case."

The counsel for the defence objected to the introduction of such evidence upon the grounds "that it was an affidavit made according to the rules; that it is not the subject of cross-examination; that it is not a statement made under the statute, and that a party cannot give evidence against himself during the progress of a trial." The court permitted it to be read to the jury as evidence, and the defence duly excepted to the order of the court. The affidavit so read was the one made by the accused to obtain a commission for the examination of Lord, Bennett and James Bouron. After reciting what he expected to prove by Lord and Bennett, and which was admitted by the prosecution to be true, he says with reference to the evidence sought to be obtained from Bouron which was not admitted to be true, as follows:

"That by said James Bouron he expects to prove that he,

the said James Bouron, has in his business property or funds invested belonging to his sister, who is the wife of Archibald W. Newton, the defendant, in the neighborhood of £5,000, and that the said James Bouron had been ordered by the defendant to convert said funds into cash, so that he, said defendant, could purchase a place or grove near their residence in said county of Orange; and to further prove that the said James Bouron gave to Mrs. Newton, his wife, certain money, amounting to about ($900) nine hundred dollars, in the currency of the United States, and that the said Mrs. Newton brought said moneys with her to the United States of America; that he cannot prove these facts, above stated, by any other persons residing within the jurisdiction of the court, nor can he bring them here at the next term of the court by any process of the court," &c., and thereupon applies for a commission and a continuance of the cause.

This was a voluntary statement made by the accused without compulsion, and in his own behalf under oath, to procure a commission for the examination of witnesses to be used in his defence. We cannot see that it could be properly excluded, and find no error in the court allowing it to be read to the jury as evidence in the cause. The People vs. McMahon, 15 N. Y., *supra.*

In Coker vs. The State, 20 Ark., 53, Mr. Chief-Justice English, in delivering the opinion of the court, says: " The voluntary statements of the accused, in a criminal case, in relation to any matter connected with the crime, whether made verbally or in writing, may be introduced against him by the State. We know of no good reason why the statements made by him in an affidavit for continuance should be excepted from this general rule, and excluded."

The seventh error contained in the assignment of errors

reads as follows: "That the court erred in allowing the Assistant State's Attorney, Thos. E. Wilson, to make a statement not under oath in reference to the testimony of the witness Cowan."

On the trial, one James Cowan was a witness on the part of the prosecution. He was interrogated by the State's Attorney as follows—Record, page 470:

Question. In your testimony yesterday you stated that Mr. Newton asked you if you would swear that the man you saw was McMillan; did he say anything more to you than that?

Answer. He said the reason he asked me was that he was going to have a glass made to look in the lake, and if I would swear I saw him it would save him the money he was going to spend on that glass. Something to that effect.

Q. Was that all he said?

A. Yes; he said if I would swear I saw McMillan that would save him making the glass. He said he was a friend of McMillan's, lived near there, and felt an interest in the affair.

Q. I ask you is that all he said?

A. Yes.

Q. Is that all you can remember?

A. Yes; it has been a while ago.

Q. Didn't he say to you that if you could swear that it was McMillan you saw that it would be a personal favor to him?

A. No sir; he didn't say that.

Q. Are you sure he didn't say that?

A. I don't recollect him saying it.

Q. State whether or not you have ever told any person he said that?

Counsel for defendant here objected to that question upon

the ground that if the object was impeachment the foundation must be properly laid.

The State's Attorney then varied the question as follows:

Q. Did you or not state to Harry True that Mr. Newton had told you if you could swear you had seen McMillan it would be a personal favor to him; and did you not admit so stating to Mr. Thomas Emmett Wilson?

A. Not that direct question; I did not.

Q. What question did you answer Mr. Wilson?

A. The question that I answered here.

Q. The question that Mr. Thomas Emmett Wilson asked you about?

Counsel for defence again objected, that the foundation for impeachment must be first laid.

State's Attorney answers: I have the right to ask him that. When I put a man on the stand he gives an answer different from what I expected.

By the Court. That is recognized and it may or may not go to his discredit. If you lay the foundation you can ask him the question.

Q. Did you or not state to Harry True that Mr. Newton had told you if you could swear you had seen McMillan it would be a personal favor to him, and did you not admit so saying to Mr. Thomas Emmett Wilson on yesterday down stairs, near the front door?

A. Not that question that Mr. Abrams just asked me about. I did not in that way.

Q. Can you state the question, and what did you say?

A. The question that I answered was that Mr. Newton told me if I could swear that I saw McMillan on that day it would save him the expense of having this water telescope made, or something to that effect.

Q. That's all you said?

A. That's all I said.

Q. You never said anything about its being a particular favor to Newton?

A. No sir.

Q. Never?

A. No sir.

Mr. Abrams. I give notice that I will put witness on the stand to prove that he is not the truthful young man Mr. Foster says he is.

Mr. Foster. It will take a good deal to convince the neighborhood that he is not.

Subsequently, (Record, page 577,) Mr. Wilson, who was assisting the State in the prosecution of the case, arising in court said: "If it please your Honor, I desire to make a personal statement to the court in regard to the witness, James Cowan, who was recalled to testify this morning. Your Honor will remember that on yesterday, while the witness, Fred True, was on the stand, I went down stairs to request Mr. Sirrine to bring the revolver into the court room. While there Harry True came to me and informed me that the witness, James Cowan, had informed him that he had not been questioned in regard to all he knew, and had not told all. · That Newton had told him, Cowan, that it would be a personal favor to him if he would swear that he saw McMillan; that he and McMillan were personal friends and it would save him a great deal of trouble looking for him. I went to Cowan, who was sitting near by, and asked him if these facts were correct, and was answered ' yes.' I asked him why he had not sworn to them when on the stand, and he said he had not been asked about them, and was on guard all night, and so sleepy he hardly knew what he was saying. I informed him that he would be recalled. I then came up stairs into the court room, reduced to writing the above state-

ment and informed Mr. Abrams of the facts. We thought it proper to recall James Cowan. That he saw fit to deny under oath this morning what he had said yesterday is a matter he must settle with himself. He made the above statement to me in the presence of Harry True, and of Edgar Harrison, and all that counsel on the other side may say of his good character cannot avail to change the fact. The statements must go for nothing as against the fact that James Cowan said what he did to me in the presence of Harry True and Edgar Harrison, and that I reduced his statement to writing so soon after it was made."

By Mr. Foster, (counsel for accused): "Unless you propose to take the stand I object to those statements."

By the court: "Counsel can make statement. It don't amount to testimony, unless he takes the stand."

By Mr. Wilson: "I don't make it as testimony, but as a personal explanation, and for all the talk about the prior character of the boy on the other side, Mr. Harrison, Mr. True and myself know that that boy made those statements to us, and if he saw proper to contradict them on the stand, that is another matter."

Mr. Foster: "I say I do not think that such statements should be made in the hearing of the jury."

By Mr. Abrams: "I think Mr. Wilson had as much right to make it as Mr. Foster had to speak of the character of the boy."

"To the allowing of the statement and the statement itself, the counsel for the defence then and there excepted."

It nowhere appears in the record that any attempt was made to impeach the witness, Cowan.

Neither True, Harrison or Wilson were sworn to prove that Cowan had made other or different statements than those sworn to by him on his examination as a witness for the prosecution. The statement thus made by Wilson ap-

pears to have been unnecessary and uncalled for, and perhaps had a tendency, as made, to affect the strength of his evidence with the jury. That evidence was probably deemed important by the accused inasmuch as it tended to prove that the accused was about having a glass made to search the lake for the body of the deceased at his own expense, and if the witness would swear that he saw deceased after the time of his alleged disappearance it would save to accused the money he was about to expend for the glass. The credit of a witness may be impeached by proof that he has made statements out of court contrary to what he has testified at the trial in matters relevant to the issue. In order to lay the foundation for such impeachment, it is necessary first to ask him as to the time, place and person involved in such supposed contradiction. This having been done, then the proof of the contradictions, thus particularly inquired into, may be submitted to the jury for their consideration. Greenleaf on Evidence, §462, and cases cited in note; Dufresne vs. Wise, 46 Wis., 290.

In Hart vs. The Hudson River Bridge Co., 84 N. Y., 56, the court say: "The time and place and the persons to whom, or in whose presence the alleged statement was made, should have been brought to the attention of the witness whom it was intended to impeach, before he can be contradicted," and cites Kimball vs. Davis, 19 Wend., 437; Palmer vs. Haight, 2 Barb., 210 ; Sprague vs. Cadwell, 12 Barb., 516. This necessary foundation was laid in this case, but instead of calling witnesses to impeach the witness, Cowan, Mr. Wilson makes his statement to the court and jury. "Statements of fact, not proved, and comment thereon are outside of the cause ; they stand legally irrelevant to the matter in question, and are, therefore, not pertinent. If not pertinent, they are not within the privilege

of counsel." In the State vs. Underwood, 77 N. C., 502, the court say: " We have in some cases ordered a new trial on account of the abuse of privilege by counsel, and will always do, so when it seems probable that the defendant has been prejudiced on his trial by such abuse." In Jenkins vs. The North Carolina Ore Dressing Company, 65 N. C., 563, the court uses the following language: " But still it may be laid down as law, and not merely discretionary, that where the counsel grossly abuses his privilege to the manifest prejudice of the opposite party, it is the *duty* of the Judge to stop him then and there. And if he fails to do so, and the impropriety is gross, it is good ground for a new trial." See also The State vs. Williams, Ib., 505.

The court, it is true, on the interposition of counsel for accused, remarked that counsel could make statements; that they did not amount to testimony unless he took the stand ; but there was no direction at any time to the jury that they were not to consider such statements in their deliberations.

In Tucker vs. Henniker, 41 N. H., 317, the court well says: " When counsel are permitted to state facts in argument, and to comment upon them, the usage of the courts regulating trials is departed from, the laws of evidence are violated, and the full benefit of trial by jury is denied. It may be said in answer to these views that the statements of counsel are not evidence ; that the court is bound so to instruct the jury, and that they are sworn to render their verdict only according to evidence. All this is true, yet the necessary effect is to bring the statements of counsel to bear upon the verdict with more or less force according to circumstances, and if they, in the slightest degree influenced the finding, the law is violated, and the purity and impartiality of the trial tarnished and weakened. If not evidence, then manifestly the jury have nothing to do

with them, and the advocate has no right to make them. It is unreasonable to believe the jury will entirely disregard them.   They may struggle to disregard them; they may think they have done so, and still be led involuntarily to shape their verdict under their influence.   That influence will be greater or less, according to the character of the counsel, his skill and adroitness in argument, and the force and naturalness with which he is able to connect the facts he states with the evidence and circumstances of the case. To an extent not definable, yet to a dangerous extent, they unavoidably operate as evidence which must more or less influence the minds of the jury, not given under oath, without cross examination and irrespective of all those precautionary rules by which competency and pertinency are tested." See also cases cited in this opinion.   Ferguson vs. State, 59 Ind., 33.   The same rule applies to statements made by counsel during the course of the trial.   We cannot but see from the evidence in this case, embodied in the record, all of which is circumstantial, that the statements so made by Wilson with reference to the evidence of Cowan may well have had the effect to impair his evidence with the jury, and was therefore not weighed in his favor.   It was improperly permitted, and the court should have stopped him from uttering it, and advised the jury then and there that it was to have no weight or effect in their deliberations.

The eighth assigned error is: " That the court erred in his various rulings on the admissibility of evidence as the same appears in the record and the bill of exceptions."

Under this error, in the brief filed by the counsel for the plaintiff in error, are objections stated and exceptions taken to the ruling of the court in over thirty different cases.   It will be utterly impossible for this court to give a careful examination to each one, as the record is voluminous, covering over eleven hundred pages of manuscript, with vol-

uminous briefs, indices and statements, but the most promi-nent will receive attention and so far as possible be classified.

We can see no objection to the evidence of Charles Saint, on page 155 of the Record referred to on page 943 of the Bill of Exceptions. The witness was testifying as to the habits and manners of the deceased, as well as to his personal appearance. In answer to the inquiry, " did he have many friends?" he answered, " well, I don't know that he had many enemies. He was a man that was very much opposed to having enemies. He would do almost anything in the world to keep from having enemies, so much so that he did not register here for fear that would give him enemies." This evidence in regard to his failure to register, and the reasons he assigned therefor, was, perhaps, immaterial, but could not work to the disadvantage of the accused. The first part of the answer was clearly admissible. In the language of brief of counsel for accused, " the next exception was to the testimony of John Dodd," but he fails to cite us to the page of this record upon which it is to be found, and it is impossible for us to go through and hunt it up. We have frequently called attention to the fact that the rules of this court require that an abstract of the testimony must be furnished with the record, and the briefs should refer to such abstract, or to the record.

The next exception noted in the brief is to evidence of VanDeeman. He testified in regard to the deceased, " I had cashed a small check or draft, and he came inside behind my counter and said he wished to arrange his money —put it away ; and drew out his pocket book, sat down at my desk, unwrapped the handkerchief he had around it, arranged his money, tied it up, put away his pocket book, and went out." " He had his money arranged, bills of the different denominations seemingly altogether. The bills I

saw ranged from one hundred dollars down to five dollars.
A fair sized package." " Q. Did you or can you, from hav-
ing seen it, form any estimate of the aggregate amount of
the package ?" This question was objected to by the de-
fence and admitted by the court and exception taken. The
answer of the witness was : "I should judge, as near as I
·can remember, there was about one thousand dollars, or in
that neighborhood." There is no error here when taken in
connection with the previous evidence given by the witness.
The money was tied up in a handkerchief in a pocket book;
he sat at witness' desk and took out his money in presence
of witness, and arranged it. It was a fair sized package,
and the bills were of different denominations from five to
one hundred dollars, and he thought, as near as he could
remember, that there was about one thousand dollars of it.
The witness subsequently described the appearance of the
bills.

There is no error in putting the question as stated in the
brief of counsel for the accused to Zeri Adams, nor to A. S.
Miller. In neither of these two cases is there any reference
in the brief to the page in the record where the facts are to
be found. The questions raised by objections to the evi-
dence of Richard Cooper, Charles Saint, J. O. Tabor, A.
Pichard, Otto Fries, Edgar Harrison, L. M. Moore, Harry
True, H. Eugene Munson, Mr. Lefften, Mrs. Hattie Mun-
son and T. M. McRae, next following in the brief of the
counsel of the plaintiff in error, will not be examined for
the reasons that in the brief there is no reference to the
page of this voluminous record upon which the evidence or
objections are to be found.

We can see no objection to putting in evidence a " full
box of 38 caliber long central fire metalic cartridges manu-
factured by the Winchester Repeating Arms Co. of New
Haven, Connecticut, U. S. A." Nor in giving to the jury

one of those cartridges, together with one of the cartridges taken from the revolver, to compare. If not experts, the jury were men qualified by law to be trusted with the comparison of cartridges, and the evidence could in no way be prejudicial to the rights of the accused. What the expert, Thos. G. Bennett, President of the Winchester Repeating Arms Co., was expected to prove under the commission asked for by the accused had been admitted to be true by the State's Attorney.

Counsel for plaintiff in error claim that great error was committed in allowing the testimony of the witness, Ellen Jones, (on page 867, &c., of the record,) in overruling the various objections, and in not ruling out the whole of her testimony.

The material portions of her testimony are as follows: in answer to questions proposed by the State's Attorney, she said—" I live at No. 21 Kingsbury road, Ball's pond road, Islington, London; I came here yesterday, direct from London. I don't know Newton except by seeing him at my house; I have seen him about five or six times altogether; I am acquainted with Mrs. Kate Newton; Mrs. Newton came to me as a lodger with her sister, and took a room in my house; they said they came from Hull; I asked them if they had any luggage; they said it was at London Bridge." At this point counsel for accused objected to what they said, and what Mrs. Newton said before her marriage. The objection was overruled by the court, and the counsel for the defence excepted.

" I said to her on Saturday, 'your luggage don't seem to come,' and they went to work for Mrs. Ford, at hat work. I was a costume maker. I rented rooms and they came and got a room from me. Mr. Newton called one Sunday and took Miss Kate Bouron out; she was then Miss Kate Bouron; her sister, Pollie. I know nothing about Kate,

except that she was a very well behaved girl while she was in my place. She was very poor, of course; she left her mother to stay with me; she had only what she could earn; she had no clothing or anything, because she said her clothes were at home; she stayed with me and went to work for Mrs. Ford up to Christmas time, and Mrs. Ford was slack of work, and she used to do a little work for me, and that's all I know about it; she came to my house about the middle of July, 1880; she left me to go home to Hull the end of March, or beginning of April, 1882."

Q. What was her financial condition when she left to go home to Hull?

A. The same as when she had been staying with me, very poor; she hadn't been able to get any clothes; I know that because I lent her some of my under linen; she was not in my debt when she left. Mr. Newton had sent her some money and she paid me. Mr. Newton had sent her some money. Mr. Newton sent her £2; I think she gave me £1 out of it.

Q. Do you know anything about Mrs. Newton's family?

A. I only know the three sisters—no four sisters, Kate, Polly, Emily and Nellie. I have seen them all.

Q. Do you know what business the family were engaged in?

By Mr. Foster: Ask her if she knows of her own knowledge.

By Mr. Abrams: She has a right to tell from statements made by Mrs. Newton.

By Mr. Foster: Then I object to it as clearly inadmissible.

By the court: I will admit it.

To which ruling counsel for defence excepted.

Subsequently, in answer to questions put by State's At-

torney, the witness said " when I spoke to him, Newton, about the rent, he didn't think he ought pay it; he thought Bushell ought to pay it. When I spoke to Bushell he said that Newton had heaps of money and he ought to pay it; that he had the best right to pay it. So Newton paid it. He, Newton, said his uncle allowed him some money, and he had only what he earned. His uncle allowed him some money, he would have the money when his uncle died. Mr. Gray was the uncle's name."

Counsel for defence objected to this evidence of conversations nearly three years ago, and to all conversations between Miss Bouron and Mrs. Jones, and between Mr. Newton and Mrs. Jones.

By the Court: I think the questions may be admitted along with the chain of circumstances.

Counsel for defence excepted to this ruling of the court.

Q. You told the other attorney that while Miss Bouron was at your house, she was very well behaved.

A. Yes.

Q. I ask you was there no exception, during that period of time, to her good behavior, in your opinion?

A. I only blame her with keeping up with Newton under the circumstances relating to her sister, that's all, if it was true of Newton as they say it was. Newton said it was not, she said it was not, the girl herself said it was.

Counsel for defence objected to anything relating to her sister.

Pending the argument, the witness said I never knew anything wrong of her, and she did not do anything wrong while she was in my place. The only thing I blamed her for was to come to America and to have married Newton. I don't say anything wrong against Kate, because she was a good girl.

By the court: The character of her sister had nothing

to do with this, but as the question was suggested by the cross-examination, she may answer according to the truth.

To this ruling counsel for defence excepted.

Other evidence of this witness was introduced and received by the court, which was objected to upon the grounds that it was immaterial and irrelevant, to which ruling of the court exceptions were taken by the defence.

Much of the testimony of Mrs. Jones, as given, was certainly immaterial and improper, and should have been excluded. It was not material that Polly was confined, or that Bushell said that Newton had heaps of money, and that he didn't think he ought to pay the rent, that he, Newton, had the best right to pay ; or the conversations had with Kate Bouron, some years before she was married to Newton in regard to her mother's business or the sale of her mother's furniture. This evidence may and undoubtedly did have an influence with the jury to prejudice them against Newton, and should have been excluded. The object of the prosecution was evidently to contradict what the accused proposed by this affidavit and commission to to prove by the witness Bouron that Mrs. Newton had $900 when she left England, and that her brother had £5,000 invested for her. The prosecution had admitted that he would so testify, but had not admitted the truth of the alleged fact. This further shows the importance of the evidence of Bouron for the accused.

The testimony of Mrs. Jones, uncontradicted, of the conversation she had with Kate Bouron tended to show that she was very poor, and had not the means Newton claimed that she had ; and immediately after the disappearance and alleged murder of McMillan the payment of debts and the purchase of goods by Newton was made a circumstance in the chain of evidence which produced his conviction.

The court did not instruct the jury, at any time during

the progress of the trial, to disregard such immaterial and incompetent evidence, but permitted it to go to them, saying: "I think the question may be admitted along with the chain of circumstances," and it was undoubtedly considered by them in making up their verdict. It has been held, when incompetent testimony had been given to the jury, and not withdrawn from their consideration, that a new trial would be granted. In the case of The Delaware and Hudson Canal Company vs. Barnes, 31 Pa., 193, in the course of the trial the court admitted certain improper evidence. After the testimony and argument had closed, and when the Judge proceeded to charge the jury, he instructed them as upon what basis they should give damages, &c. On error the Supreme Court say: "It is to be observed that the evidence was not withdrawn from the jury. They were not told to give it no consideration; nor were they instructed that it was not properly before them. * * * In fine, the jury were simply restrained from making the illegal evidence an independent ground of recovery. And even this caution was not given until the illegal and pernicious evidence had been permitted to work its impression during the whole progress of the trial." Again, the court in this case say: "Undoubtedly, when a mistake has been made in the admission of evidence on the trial of a cause it may subsequently be rectified. It may be withdrawn by the party who has given it, or the court may withdraw it, and positively instruct the jury to disregard it—to discard it from their view. In such a case, it is the duty of the court to see to it that no mischief is done; that the illegal evidence be withdrawn, *wholly withdrawn*, and *withdrawn for every purpose*." The court, for this error alone, reversed the judgment and granted a new trial. Ellis vs. Short *et al.*, 21 Pick., 142, and cases cited; Underhill vs. N. Y. and

Harlem R. .R. Co., 21 Barb., 489; Smithermas vs. The State, 11 Ala., 355; Clark vs. Voice, 19 Wend., 232.

In State vs. Meader, 54 Vermont, 126, the court in its head note, which is fully sustained by the opinion and authorities therein cited, says: "The admission of illegal evidence, if objected to, though under an offer of connecting it with other proof that would render it competent, and though charged out of the case by the court, is a cause for setting aside a verdict, unless the court is able to say affirmatively that it worked no injury to the adverse party." It is a well settled rule of law that when the error is in the admission of illegal evidence which bears in the least degree on the question in issue, it cannot be disregarded. Here the defendant's life was at stake, the proof as to Newton was all circumstantial, nothing whatever direct—how careful then should the court be in the admission of evidence; and permit nothing that bore upon the case in the least degree to go to the jury, unless warranted by law, or the rules of evidence. Weeks vs. Lowerre, 8 Barb., 530; People vs. Wiley, 3 Hill, 214; Hilliard on New Trials, 407.

The ninth error assigned is, " that the court erred in permitting the State's Attorney to argue in reference to the conviction of another person for another murder, as appears from the bill of exceptions." In the bill of exceptions the following facts appear: "The State thereupon rested its case, and the defendant offered no evidence or testimony, and in the argument before the jury the State's Attorney said: 'because I say, and with all the earnestness with which I am capable, that there never was to my reading or knowledge a case of circumstantial evidence where every link was so perfect, where the facts were so overwhelming, and when the presumption of guilt was so startling in its conclusions, as in the case before you. If we cannot convict on this testimony, then there is a man under verdict of

murder in the first degree, now incarcerated in that jail, who ought to have the door of his prison house opened, and—'

"By Mr. Foster: 'I object to his stating what is not in the evidence.'

"By the Court: 'He is only using it as an argument.'

"By Mr. Foster: 'Well, I except to that style of argument being used.'

"Mr. Abrams then said: 'I will suppose a case. I say there is the case of Palmer, which the learned writer stigmatizes in the severe language I have read to you—he says of him: 'He was a model of physical health and strength, and was courageous, determined and energetic. No one ever suggested there was a disposition towards madness in him; yet he was cruel, as treacherous, as greedy of money and pleasure, as brutally hard hearted and sensual a wretch as it is possible even to imagine.' Now you don't find verdicts by comparison with verdicts in other cases, nor am I telling you what the testimony in that case was, but I am only stating to you that if this man were declared innocent that no others should be punished.'"

It has been said with truth that the comments and arguments of counsel in the progress of a trial before a jury are controllable in the discretion of the Judge who presides; it is, however, a judicial discretion, and if used to the injury of either, and it so appears properly in the record, an Appellate Court may and should revise and control it. If the remarks so made by counsel were pertinent in argument they are proper for the consideration of the jury when they have retired to deliberate upon their verdict. His illustrations of the man convicted of murder, now in jail, who should be released, if no conviction was found in this case, and the other, of the man Palmer, a supposititious case, were entirely outside of the record and the evidence, and were

calculated to prejudice the rights of the accused. The court, in answer to an objection interposed by counsel for accused, said " he is only using it as an argument," thus, emphasizing the position taken by the State's Attorney, and giving it the force and weight of its approval. In the State vs. Williams, 65 N. C., 505, the court say : " The question is, whether his Honor had the power to stop the Solicitor for the State, when he was, in the opinion of his Honor, abusing his privilege in his comments on a witness. and his testimony. It is a power which is usually exercised sparingly ; and which ought to be promptly and firmly exercised, when the abuse is gross, as was the case here. It is especially proper to exercise the power in a criminal case, when the State is prosecuting one of its citizens, and should not allow the jury to be improperly prejudiced against him. There is error."

In Jenkins vs. The N. C. Ore Dressing Co., 65 N. C., 563, the court say : "It may be laid down as law, and not merely discretionary, that when counsel grossly abuses his privilege to the manifest prejudice of the opposite party, it is the duty of the Judge to stop him then and there. And if he fails to do so, and the impropriety is gross, it is good ground for a new trial." State vs. Underwood, 77 N. C., 502 ; Cable vs. Cable, 79 N. C., 589 ; State vs. Guy, 69 Mo., 430 ; Proctor vs. DeCamp, 83 Ind., 559 ; Dickenson vs. Burke, 25 Ga., 225 ; Ferguson vs. State, 49 Ind., 33 ; Hilliard on New Trials, 225.

In Combs vs. The State, 75 Ind., 221, in discussing this question of the discretion of the trial court, to be exercised in matters of argument by counsel, the court say : "To rigidly require counsel to confine themselves directly to the evidence would be a delicate task, both for the trial and the appellate courts, and it is far better to commit something to the discretion of the trial court than to attempt to

lay down or enforce a general rule defining the precise limits of the argument. If counsel make material statements outside of the evidence, which are likely to do the accused injury, it should be deemed an abuse of discretion, and a cause for reversal, but when the statement is a general one and of a character not likely to prejudice the cause of the accused in the minds of honest men of fair intelligence, the failure of the court to check counsel should not be deemed such an abuse of discretion as to require a reversal."

In the case at bar, the remarks of counsel were outside of the evidence and the reasonable bounds of argument. They had no relation to the guilt or innocence of the accused, and were certainly intended to influence the minds of the jury in coming to a conclusion. We can very well see that they may have had such a result. The court, in the exercise of a sound judicial discretion, should have prevented or stopped them or advised the jury that they were not to be considered by them.

The tenth error assigned is, " in allowing the State's Attorney to interrupt the defendant's counsel, and state facts not offered in evidence."

On an examination of the record, it appears that during the argument of the case by counsel for the accused, there was some " cross-firing " between the State's Attorney and the counsel. Mr. Foster, in his argument, said " going back for a moment to the expert testimony, I desire to call your attention to one point. Mr. Abrams tried to prove that the blood on the handkerchief met all the requirements of the blood of the brain, and he signally failed to do it, because, mark it, Dr. Wylly answered his question by saying, that all these ingredients found on the handkerchief could have been found from blood flowing from a wound on the brain ; and when I asked him, when you stated in general terms that a wound on the brain had all

these appearances, you don't mean to say that a wound in the brain made these appearances ?

"A. No. I saw no brain tissue, there were many other things necessary. Mr. Abrams interrupted counsel, saying, 'I desire here to say that it is a matter well known to medical science that brain tissue disappears in a few minutes.' Mr. Foster then said, 'well, Dr. Abrams.' Mr. Abrams said, 'you can call me Dr. Abrams, because I am the son of a doctor, and am proud of my medical knowledge,' to which Mr. Foster said : 'Dr. Abrams was not on the stand, was not cross-examined, and has no right to argue notorious facts as he says, but if I am to be interrupted, whenever I discuss these experts, and show their inconsistency, why, I will simply state what Dr. Wylly says, and let him and Dr. Abrams talk it out.'" It is clearly improper for counsel to add, by his own statement, without the authority of evidence, to the testimony submitted to the jury. The statement of facts not in the evidence should not be allowed to be given or discussed. In this case the attention of the court does not appear to have been called to the remarks of the prosecuting attorney, and no exception appears by the bill of exceptions to have been taken.

The eleventh exception is to the charge of the court to the jury.

The charge of the court is in writing, and is embodied in the record in full, as also in the motion for new trial. On the motion for a new trial one of the grounds reads as follows: " The court erred in his charge to the jury in commenting on the testimony, and in relation to the statement in regard to the jury's recommending to mercy. And that the court also erred in the charge generally as calculated to confuse the jury and mislead them, though not intentionally, and the charge is hereby made a part of the motion, the parts considered as error marked as such."

By §2, chap. 3431, Laws 1883, it is provided that "it shall be lawful for either party in any civil cause or for the defendant in any criminal cause, in said courts, after verdict rendered, to embody in the motion for a new trial any portion of the charge of the Judge which may be deemed erroneous, which shall be taken as an exception to said charge, and if such motion for a new trial upon the hearing shall be refused, such refusal together with the subject matter of the charge contained in such motion, may be made the subject of review by the Supreme Court." Under this statute then we come to review the charge of the court, or such portions of it as are designated in the motion for a new trial, the motion having been denied by the court below.

The first point is that the Judge " erred in commenting on the testimony," as contained in the fourth clause of the charge. In his brief, counsel for the plaintiff in error claims that the charge of the Judge or so much thereof as refers to facts proven, was erroneous, as it was charging directly on the evidence, and the question as to when Mr. McMillan disappeared, was an important link in the cause. The portion of the charge so objected to is in the following words: " It has been proven that Samuel McMillan disappeared after a certain time, and has not been seen or heard from since. After his disappearance a body was found and testimony has been introduced to prove that it was his body. It becomes your duty to ascertain from the testimony, whether it was the dead body of Samuel McMillan that was found in a certain lake, and from the testimony, whether he had been shot as thereby appears."

It is certainly a violation of the rule for the Judge to comment upon the testimony in his charge to the jury in such a way as to influence them in finding a certain fact. In this case, however, many witnesses, neighbors and friends, had positively testified as to the disappearance of

McMillan, and it was a conceded fact, not in any way by means of evidence disputed by the defence. It was not such a commentary as affected the verdict of the jury and was of no injury to the accused. It is also accompanied in the exception with the other remarks of the court submitting to them the question from the testimony as to whether it was the body of McMillan that was found in the lake, and whether he had been shot as thereby appears. These latter two submissions of fact were proper. The whole statement of the court was objected to and it must be all taken together, and in it there is no error. Hilliard on New Trials, 286 ; Nutting vs. Hubert, 37 N. H., 346.

The next point is what is contained in the sixth section of the charge, and of it counsel, in his brief, says: " We claim as error, because it is given in such a confused and unintelligible way as to have no effect upon the jury." The portion numbered six, so objected to, is as follows: " That circumstantial evidence is often as strong, sometimes stronger than positive evidence, has been held by writers of law and so admitted by courts of the highest record, that is Appellate and Supreme Courts, whose decisions are considered of high and imposing authority, and in many States, binding and authoritative," &c. The court then charges as to the difference between direct and circumstantial evidence, and says: " Direct and positive evidence is when the witness can be called to the stand to testify to the precise fact which is the subject of issue ; but if no one saw the killing, circumstantial evidence, if the killing is proved, which must be, may then legally be offered in such case as to the connection of the accused with the fact of the killing; circumstantial evidence, therefore, is founded, as it has its legal basis and rational conclusion, on experience and observed facts and evidence establishing a connec-

tion between the known and proved facts and those facts sought to be. proven. The burden of finding everything essential to the charge lies on the State."

We cannot see that this portion of the charge is liable to the criticism of counsel in his brief. The court tells the jury the difference between direct and circumstantial evidence, which was very proper in a case of this character. . Circumstantial evidence, it is said, has been found in some instances " to produce much stronger assurance of the prisoner's guilt than could have been produced by the most direct and positive testimony."

" A presumption is a probable inference which our common sense draws from circumstances usually occurring in such cases." 1 Cowen's & Hill's Notes, 598 and notes.

In the seventh clause of the charge excepted to, we see no error.

. The court submitted the testimony to the jury.

In the eighth clause of the charge, the court says : " If it is proven to the satisfaction of the jury that the accused . killed Samuel McMillan, then it must be concluded from the evidence whether it was premeditated killing, and as such, murder in the first degree. If a homicide or killing is proven, and no ground of defence set up or proven, as to the reason, or cause, or motive, the law presumes that it was premeditated unless proven to be accidental or unintentional." This was error.

Premeditation is a question of fact for the jury, to be determined from the whole evidence. This court has on several occasions decided this very question. Savage and James. vs. The State, 18 Fla., 909 ; Ernest vs. The State, 20 Fla., 383 ; Blige vs. The State, 20 Fla., 742.

The alleged errors in the ninth, tenth and eleventh clauses of the charge consist in the instructions to the jury in regard to their finding defendant guilty of a less offence

than that charged in the indictment. The court says: "The accused is on trial for murder in the first degree. If, from the testimony, you believe that he killed Samuel McMillan, and that the act involves a lesser offence under the charge of killing, you can so find, but of this the evidence must be satisfactory. In such connection is embraced murder in the second degree."

The court then explains what constitutes murder in the second and third degree under our laws, and then concludes, " these are the divisions of the law of this State under the head of murder. In examining the testimony in the case to see whether it is applicable to murder in any of the above stated degrees, you will be careful to ascertain whether, by the same clear and strong conclusions of its application, to the offence of which you might think him guilty, if you so find." *   *.   *   *   *   *
" The accused has offered no testimony, and the different degrees of murder have been presented to the jury in order that they might be informed of the different distinctions the meaning of the law, and the application of the testimony under the law of the case." While perhaps in this case under the evidence, it was not necessary for the court to emphasize the difference between murder in the first, second and third degrees as recognized by statute, yet it was in no way prejudicial to the interest of the accused, and could not influence the jury in their finding. While it may not have been called for under the circumstances of the case, yet it was not such error as would produce a reversal of the judgment, or grant to the accused a new trial.

The next objection found by the counsel for defence is to the twelfth clause of the charge upon the law giving to juries in cases of murder the right to recommend to mercy. The statute of this State (Laws 1872, chap. 1877,) provides:

"That whoever is convicted of a capital offence, and recommended to the mercy of the court by a majority of the jury in their verdict, shall be sentenced to imprisonment in the State prison for life, with or without solitary confinement, at the discretion of the court." The court charged as follows: "If the jury find the defendant guilty they can recommend him to the mercy of the court, and that reduces the punishment to an imprisonment in the penitentiary for life, but this is in the discretion of the jury." So far the charge is correct, except that the court failed to say that a majority of the jury could so recommend to mercy. If the court deems it necessary to charge on this question it should be in the language of the statute, which does not make it his duty, or prohibit him from so doing. The case of Metzger vs. The State, 18 Fla., 481, does not go to the extent of prohibiting the court from charging on this question; it only decides that it is not error for court to refuse to charge. "Counsel may read the act to the court and jury, if they desire to do so, and the Judge may give it to the jury if desired." The remainder of the clause so objected to is as follows: "It is not the purpose nor the spirit of the law that the enforcement of the penalty should be set aside, unless in the calm, deliberate judgment of the jury they are decided in this conviction of a just mitigation of the death penalty to imprisonment for life, on account of some bearing in the testimony to such conclusions, but not from any mere merciful consideration of tender and kind feeling for the violation of the law under the death penalty, nor from sympathy for the unfortunate, but only when there is some mitigating circumstance, apparent from the testimony, or some rational or legal consideration for sympathy in the enforcement of the law stronger than a mere exercise of tender feelings. This is merely the expression of the views of the court as to the intention of the Legislature in passing

the law. But after stating to the jury that the recommendation to mercy is in the *discretion* of the jury, where the law has placed it, it is improper to attempt to control them in its free exercise according to their own judgment of the merits of the case. The law is positive. If a *majority* of the jurors recommend to mercy, by whatever motives they may be actuated, (and these motives are not circumscribed) the court is bound to heed their verdict, and pronounce sentence accordingly.

The thirteenth clause of the charge was excepted to because it was misleading to the jury. We cannot see how it could be misleading, or where the error is. The court says: "Inference from circumstantial testimony is only legal so far as it is based upon some material or reasonable conclusion, evidently deducible from an undenied and proven fact. If the circumstance be such as affords a fair and reasonable presumption of the fact to be tried it is to be received and left to the action of the minds of the jury, whose duty it is to determine its precise force and effect from the circumstances proved, and whether they are sufficiently satisfactory and convincing to justify them in finding the fact in issue. Presumptive evidence is admissible in criminal cases where direct evidence of facts cannot be supplied. Reasonable minds will necessarily form their judgments on circumstances according to their presentments to the understanding, and their force and connection. The burden of proof to establish the guilt of the accused being on the State, the evidence must satisfy you of his guilt, and that, as has been explained, beyond a reasonable doubt. As to the rule as to circumstantial testimony, it is held that no rule can be given as to what circumstances are admissible, except that they must tend to prove the offence, and connect the defendant with it ; they may be remote, or they may be near, minute or of larger dimensions."

In this case, where the evidence was almost entirely circumstantial, and where there was no direct proof of the commission of the offence by the accused, it was evidently proper for the court to so charge, and in it we find no error.

There is no error in the charge of the court in regard to the evidence of experts. The court said : " The testimony of a witness as a man of science on a subject with which he is familiar from knowledge or experience, is admissible, and you can judge of its force and application from the character of the testimony, the case under consideration, and the subject matter under examination ; and you may apply its force as you believe and understand its relation to the case. If they testify to a scientific truth, they are entitled to belief. Yet they may be received with caution." It is said " that the opinions of medical men are certainly admitted as to the cause of disease, or of death, or the consequences of wounds, and as to the sane or insane state of a person's mind, as collected from a number of circumstances, and as to other subjects of professional skill. And such opinions are admissible in evidence, though the witness founds them, not on his own personal observation, but on the case itself as proved by other witnesses on the trial." Hilliard on New Trials, §440, and notes ; 1 Cowen & Hill and Edwards Notes, Phil. Ev., 778 ; 1 Greenleaf Ev., §440.

There was no ground for arresting the judgment, but the court should have granted a new trial.

The judgment must be reversed and a new trial is awarded.